871 P.2d 261

**MARICOPA COUNTY**

v.

**STATE of Arizona; Arizona Department of Revenue.**

**No. TX 93–00469.**

Tax Court of Arizona.

March 14, 1994.

Helm & Kyle, P.L.C. by Ileen K. Keenan, John D. Helm, Tempe, for plaintiff.

Atty. Gen. by Michael F. Kempner, Phoenix, for defendant.

Beus, Gilbert & Morrill, P.L.L.C. by K. Layne Morrill, Phoenix, for intervenors.

## OPINION

SCHAFER, Judge.

The issue in this case is whether Section 2 of House Bill 2007 is an unconstitutional gift of public money for private use. The bill permits property owners to file retroactive certifications of agricultural use and grants refunds of taxes assessed under non-agricultural use classifications.

Maricopa County (the County) brought this Motion for Summary Judgment seeking a declaration that Section 2 of House Bill 2007 (enacted as A.R.S. § 42–168) is an unconstitutional gift of public funds.[1]

The Arizona Department of Revenue (the Department) and a group of interested property owners (Intervenors) argue that Section 2 of House Bill 2007 is not an unconstitutional gift of public monies. They take the position that the statute is merely a procedural enactment and is one done for the longstand-

---

1. On December 9, 1993, this Court issued an opinion granting the County's motion for summary judgment on two grounds. On January 27, 1994, counsel for the Arizona Department of Revenue filed a motion for reconsideration, or alternatively, a motion for new trial, as to both grounds. The Court, on March 8, 1994, denied the motion for new trial, but granted the motion for reconsideration. This opinion reflects the Court's decision after reconsidering its earlier ruling.

ing public purpose of supporting agricultural use of property in Arizona.[2]

On April 14, 1993, House Bill 2007 was signed by the Governor. Section 2 of the bill amends Title 42 of the Arizona Revised Statutes, specifically A.R.S. § 42–168, by granting certain property owners a retroactive avenue of relief for obtaining agricultural use classification of property which was originally denied such classification due to the owner's failure to comply with the requirements of A.R.S. § 42–167(D).[3]

Section 2 provides that taxpayers who own property used for agricultural purposes which meets the criteria prescribed under A.R.S. § 42–167(A), but who failed to file the annual certification of eligibility for any year as required by A.R.S. § 42–167(D), may file the agricultural use certification form for that year with the county assessor on or before February 15, 1994. If the taxpayer submits the certification form, together with a sworn statement that the certification is true and correct, and the assessor is satisfied the property meets the requirements of

A.R.S. § 42–167(A), then the property is to be reclassified, the value is to be redetermined, and a certificate of revaluation issued to the owner. The owner may then submit the certificate to the county treasurer for a refund.[4]

The Court agrees with the County that Section 2 of House Bill 2007 is an unconstitutional gift of public monies.

## ANALYSIS

■ This Court knows that legislative enactments are entitled to a presumption of constitutionality; however, this Court is also aware of its duty to uphold the Arizona Constitution. When the Court is determining the constitutionality of a legislative enactment, the Court is not concerned with the wisdom, necessity, propriety or expediency of the legislation in question; those are matters exclusively within the province of the legislature. *Industrial Development Authority of*

2. Section 1 of House Bill 2007 is not being challenged in this action.

3. A.R.S. § 42–167(D) provides that before property is eligible for agricultural classification, a completed agricultural application form must be timely filed with the county assessor. Agricultural classification may be maintained if the owner timely files a completed application form at least once every five years. In a year in which an application form need not be filed, the owner must timely file a certification form wherein the owner certifies that the information in the application form is still correct. If the owner fails to file either of these forms by September 16 of the year preceding the tax year in question, "the assessor *shall not* classify the property, on notice of valuation, as being used for agricultural purposes for the next tax year." A.R.S. § 42–167(D) (emphasis added).

4. Section 2 of House Bill 2007 states:
"A. A person who owns property used for agricultural purposes that meets the criteria prescribed by section 42–167, subsection A, Arizona Revised Statutes, but who failed to file the annual certification of eligibility for any year as required by section 42–167, subsection D, Arizona Revised Statutes, may file the certification for that year with the county assessor on or before February 15, 1994.
"B. If the property owner submits a complete, correct and timely certification under subsection A of this section, together with a sworn state-

ment, under penalty of perjury, that the information contained in the certification is true according to the owner's best belief and knowledge, and if the assessor is satisfied that the property meets the requirements prescribed by section 42–167, subsection A, Arizona Revised Statutes, for the year in question, the assessor shall:
"1. Reclassify the property as class four under section 42–162, Arizona Revised Statutes, for the year in question.
"2. Redetermine the valuation of the property for the tax year in question pursuant to section 42–167, Arizona Revised Statutes.
"3. Issue a certificate of revaluation to the property owner.
"C. The owner shall submit the certificate of revaluation to the county treasurer. If taxes have already been paid by the current owner with respect to the property for the tax year in question, and if the person submits proof that the person has paid the taxes for the tax year for which reclassification is sought, the county treasurer shall refund the excess taxes paid after receiving the certificate. The county treasurer is entitled to credit for the refund in the next account period with the state and each political subdivision to which the tax monies may have been transmitted. If taxes have not yet been paid with respect to the property for the tax year in question, the county treasurer shall forgive and strike off from the tax roll the excess amount of taxes together with any interest and penalties accruing to the excess amount."

*the City of Pinal v. Nelson,* 109 Ariz. 368, 371, 509 P.2d 705, 708 (1973).

The County argues that Section 2 of House Bill 2007 operates as a gift of public funds without a public purpose. Article 9, section 7, of the Arizona Constitution provides, in pertinent part:

Neither the State, nor any county ... shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation. . . .

This prohibition prevents governmental bodies from depleting the public treasury by giving advantages to special interests or by engaging in non-public enterprises. *Wistuber v. Paradise Valley Unified School,* 141 Ariz. 346, 349, 687 P.2d 354, 709 (1984); *State v. Northwestern Mutual Insurance Company,* 86 Ariz. 50, 53, 340 P.2d 200, 201 (1959). Either objective may be violated by a transaction even though the transaction has surface indicia of a public purpose. *Wistuber,* 141 Ariz. at 349, 687 P.2d at 709.

"The reality of the transaction both in terms of purpose and consideration must be considered. A panoptic view of the facts of each transaction is required." *Wistuber,* 141 Ariz. at 349, 687 P.2d at 709. The test to be applied in determining whether an expenditure violates Article 9, section 7, has been stated as follows:

[M]erely because the private entity 'uses public funds or property for a 'public purpose' is not sufficient, in and of itself, to remove that use from the provisions' of the Constitution. [*City of Tempe v. Pilot Properties, Inc.,* 22 Ariz.App. 356, 362–63, 527 P.2d 515, 521–22 (1974).] There must also be 'consideration' which is not 'so inequitable and unreasonable that it amounts to an abuse of discretion,' thus providing a subsidy to the private entity.

*Wistuber,* 141 Ariz. at 349, 687 P.2d at 709. "Subsidy" has been defined as:

'[A] grant of fund or property from a government, to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public.'

'Assist' means 'to give support or aid to, especially in some undertaking or effort,'

Webster's 3rd New International Dictionary (1969).

*City of Tempe v. Pilot Properties, Inc.,* 22 Ariz.App. 356, 362, 527 P.2d 515, 521 (App. 1974) (citation omitted). The concession given in exchange for public funds must be more than a mere gratuity with no possible value enuring to the state or its political subdivisions. *Schrey v. Allison Steel Manufacturing, Inc.,* 75 Ariz. 282, 288, 255 P.2d 604, 608 (1953).

Here, Section 2 of House Bill 2007 allows a select group of property owners to obtain a refund or a cancellation of taxes which became due when they failed to comply with specific statutory mandates. The Department and the Intervenors vigorously argue that allowing the refund or cancellation will further the public purpose of supporting agricultural use of property in Arizona. However, to support agricultural use, the legislature may not make a gift or provide a subsidy of public funds to a select few. Only a small group of owners will receive the benefit of Section 2; only those owners who either ignored the explicit filing requirements of A.R.S. § 42–167(D) or those who have now repossessed their land after selling it to persons who ignored A.R.S. § 42–167(D). The County gets nothing in return that it would not have gotten had these individuals timely complied with the pertinent statutes.

In fact, the County will be out more than simply the tax revenue itself. The County will be forced to expend valuable time and resources verifying the past due petitions, revaluing the property, processing the refunds and paying interest, if due, on the money refunded. These expenditures are not necessitated by any act of the County, but rather are necessitated because the property owners initially failed to fulfill the obligations required of them to receive agricultural use classification.

In A.R.S. § 42–167(D) the legislature made the filing of certification and application forms mandatory in order to obtain the

favorable agricultural use classification. If an owner fails to file the required form the County *"shall not"* give the owner agricultural use classification. A.R.S. § 42–167(D) (emphasis added). Now Section 2 abrogates the mandatory non-classification as agricultural property of A.R.S. § 42–167(D). It operates no differently than simply handing some owners a check drawn on the public treasury to pay their taxes. This clearly constitutes a gift of public monies. The question then becomes whether that gift is for a public purpose sufficient to remove it from the prohibitions of Article 9, section 7.

In determining whether Section 2 is one supported by a "public purpose" we are not aided by House Bill 2007 itself. The bill does not contain a clause disclosing the legislature's purpose or intent in enacting the law. It contains only the standard "emergency" clause (in Section 4) which states simply that "[t]his act is an emergency measure that is necessary to preserve the public peace, health or safety...." There are no serious assertions by either the Department or the Intervenors, that without Section 2 there will be a breach of the "public peace," or that somehow the public's health or safety will be threatened. In fact, the Department and the Intervenors have not provided this Court with any showing that the *public,* not just a small group of the community, benefits from Section 2.

The Department and the Intervenors assert that the Court does not need a specific purpose statement to find that the enactment is designed to further agricultural use of property. They argue that the Court may simply glean the purpose from other statutes and cases. However, the intents and purposes behind Section 2 have not previously been discussed nor can this Court ascertain specifically what the legislature intended.

This Court recognizes that it is allowable for a small group of the community to receive incidental benefits from the expenditure of public funds. *Industrial Development Authority of the City of Pinal,* 109 Ariz. at 372–73, 509 P.2d at 710–11. However, the primary purpose for the expenditure must be for the benefit of the public, not private parties as is the case here. Section 2 contains no requirement that the funds refunded be used to further agriculture or further any other public purpose.

> A donation of public property that is deemed by the city fathers to be for the public good, in our opinion falls squarely within the prohibition of our constitution and the purpose of such provision as determined by our Supreme Court.... '[T]he constitution makes no distinction as between "donations," whether they be for a good cause or a questionable one. It prohibits them all.'

*Pilot Properties, Inc.,* 22 Ariz.App. at 362, 527 P.2d at 521 (citation omitted). This Court does not find that Section 2 operates for a public purpose sufficient to remove it from the Article 9, section 7, prohibition against gifting public funds. Consequently, Section 2 of House Bill 2007 is unconstitutional.

■ The County also argues that Section 2 violates due process by retroactively impairing the County's property rights in funds already vested in the County. Although it is unnecessary to decide this issue because of the finding that Section 2 is an unconstitutional gift, it should be noted that generally, municipal corporations "have no standing to invoke ... the provisions of the Fourteenth Amendment of the Constitution in opposition to the will of their creator [the state]." *Coleman v. Miller,* 307 U.S. 433, 441, 59 S.Ct. 972, 976, 83 L.Ed. 1385 (1939). In this context, municipal corporations include counties. *Laramie County v. Albany County,* 92 U.S. 307, 23 L.Ed. 552 (1876). The Arizona due process provision "is congruent with the U.S. Constitution, amendment 5 and 14." *State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 236, 836 P.2d 445, 449 (App.1992). Thus, the County does not have standing to raise a due process claim.

## CONCLUSION

The effect of Section 2 of House Bill 2007 is to allow taxpayers a second chance, retro-

actively, to obtain agricultural classification. It is an impermissible gift of public monies to a select group of private individuals. As such, it violates the Arizona Constitution.

This opinion is not a final, appealable judgment; other orders will follow. See *Devenir* *Associates v. City of Phoenix*, 169 Ariz. 500, 821 P.2d 161 (1991).